

**SO ORDERED,**

**Judge Jason D. Woodard**

**United States Bankruptcy Judge**

**The Order of the Court is set forth below. The case docket reflects the date entered.**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF MISSISSIPPI

In re:                              )
                                    )
    JACKEY L. DOBBS,                )        Case No.:    15-11096-JDW
                                    )
        Debtor.                     )        Chapter 13

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the *Order to Show Cause* (the "Show Cause Order") (Dkt. # 35), entered on May 14, 2015, in this now-dismissed chapter 13 bankruptcy case of Jackey L. Dobbs (the "Debtor"). As stated in the Show Cause Order, the issues discussed herein first came to the Court's attention after a review of the *Chapter 13 Voluntary Petition* (the "2015 Petition")(Case No. 15-11096; Dkt. # 1), the *Certificate of Credit Counseling* (the "First Certificate")(Case No. 15-11096; Dkt. # 3), a second *Certificate of Credit Counseling* (the "Second Certificate")(Case No. 15-11096; Dkt. # 16), and the Debtor's testimony at a May 12, 2015 hearing. At that time, the Debtor appeared and testified that his former attorney, Neal H. Labovitz, had forged the Debtor's signature on the bankruptcy petition and

filed a bankruptcy case on the Debtor's behalf without being authorized to do so.  The Debtor also testified that the First Certificate was falsified, as he never took the credit counseling.  Upon consideration of the 2015 Petition, the First and Second Certificates, and the Debtor's May 12 testimony, the Court found it necessary for Mr. Labovitz, to appear and show cause why sanctions and other disciplinary actions should not be imposed.

Pursuant to the directives of the Show Cause Order, a hearing was held on July 7, 2015, at which time Mr. Labovitz appeared as directed.  Mr. Labovitz did not call any witnesses, nor did he present any new evidence, but instead relied on his own recitation of events as an explanation to the Court.  The details of the July 7 hearing – and of this matter as a whole – are discussed below.  Based on Mr. Labovitz's own statements, it is clear that the Debtor's May 12 testimony regarding the forged signatures and unauthorized filings was true.

In short, the Court has concluded that Mr. Labovitz put the Debtor in bankruptcy without the Debtor's authorization or knowledge, forged the Debtor's signature, had the Debtor's estranged wife take a credit counseling course in place of the Debtor, and then filed fabricated documents with the Court.

Mr. Labovitz owes a duty of candor to this Court and fidelity to his clients.  These duties are not only two of the most important attributes of an

ethical lawyer, but are absolute baseline requirements for the practice of law. Mr. Labovitz has failed at both in this case.

## I.   JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 151, 157(a) and 1334(b) and the United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc Dated August 6, 1984.  This is a core proceeding arising under Title 11 of the United States Code (the "Bankruptcy Code") as defined in 28 U.S.C. § 157(b)(2)(A).[1]

## II.   BACKGROUND

As this matter originally came to the attention of the Court through an examination of the Debtor's now-dismissed chapter 13 case, a review of that case history is appropriate. The following summary of facts and events is taken from the Show Cause Order, through which Mr. Labovitz was given notice of the allegations made against him (Dkt. # 35).

_____

[1] The Court is compelled to clarify that there is no question as to its constitutional authority to hear this matter and enter a final order.  *See Stern v. Marshall,* 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011) (holding that a bankruptcy court lacked the constitutional authority to enter a final judgment on a counterclaim grounded solely in state common law and which did not affect the claims adjudication process); *In re Stomberg,* 487 B.R. 775, 805-06 (Bankr. S.D. Tex. 2013).  Not only is this a core matter not grounded in state law pursuant to 28 U.S.C. § 157(b)(2)(A), it arises through Mr. Labovitz's position as an officer of this Court (thereby bringing it under the purview of Fed. R. Bankr. P. 9011, 11 U.S.C. § 105, and the other above-referenced sources of authority).  Furthermore, Mr. Labovitz has impliedly consented to this Court's authority by filing documents, appearing at hearings, and otherwise participating in the bankruptcy cases and adjudication of the Show Cause Order without objection.  *See Wellness Int'l Network, Ltd. v. Sharif,* 135 S.Ct. 1932, 1940 (2015).

### A. The 2013 Case

On February 22, 2013, the Debtor and his then-wife, Janette Dobbs,[2] filed a joint *Chapter 13 Voluntary Petition* (the "2013 Case")(Case No. 13-10662; Dkt. # 1).  At the time the 2013 Case was filed, Mr. Labovitz was counsel of record for the Debtor and Mrs. Dobbs.  On April 8, 2013, a proposed plan of reorganization was filed (the "2013 Plan")(Case No. 13-10662; Dkt. # 16), though no plan was ever confirmed.

Objections to confirmation of the 2013 Plan were filed by both the case trustee, Locke Barkley, and creditor Bank of Holly Springs (the "Bank")(Case No. 13-10662; Dkts. # 18, 23, 91 and 95).  In addition to the objections, the Bank filed a motion to lift stay (the "Motion to Lift")(Case No. 13-10661; Dkt. # 19).  Although the response deadline was May 7, an objection to the Motion to Lift was not filed until May 20. (Case No. 13-10662; Dkt. # 34).  The Bank subsequently filed an amended motion to lift stay (the "Second Motion to Lift")(Case No. 13-10662; Dkt. # 88).  The Motion to Lift and Second Motion to Lift sought stay relief as to the same property that was the subject of the Bank's objections.  No response was filed or defense offered as to the Second Motion to Lift, and the stay was lifted.  (Case No. 13-10662; Dkt. # 105).

---

[2] Although the Debtor and Janette Dobbs have since separated, for the sake of clarity – as the history of this case concerns the time periods both before and after their separation – Janette Dobbs will be referred to as "Mrs. Dobbs" throughout this opinion.  The Court is unaware of any subsequent name change.

Based upon the termination of the stay in relation to the real property, the Court found that the Bank's objections to confirmation should be sustained. Accordingly, on December 23, 2014, an order was entered (the "December 23 Order")(Case No. 13-10662; Dkt. # 99) sustaining the various objections to confirmation made by the Trustee and Bank. The December 23 Order further denied confirmation of the 2013 Plan, and ordered the debtors to file an amended plan within sixty (60) days from entry of the order. No amended plan was filed as directed by the December 23 Order, and on March 24, 2015, the 2013 Case was dismissed (Case No. 13-10662; Dkt. # 114).

### B. The 2015 Petition and the First Certificate

On March 26, 2015, this case was commenced with the filing of the 2015 Petition and First Certificate (the "2015 Case").[3] According to the First Certificate, the Debtor obtained his mandatory credit counseling on March 26, 2015 at 9:04 AM, several hours before the 2015 Petition was filed. The 2015 Petition contains what purports to be the Debtor's electronic signature and the certifications that he took credit counseling, and Mr. Labovitz was again listed as counsel of record for the Debtor. The 2015 Petition also contains the electronic signature of Mr. Labovitz.

---

[3] The Debtor and Mrs. Dobbs separated sometime during the pendency of the 2013 Case, but before the filing of the 2015 Petition. Accordingly, the 2015 Petition was for the Debtor individually, and not a joint case.

On April 1, 2015, Mr. Labovitz filed a *Motion to Withdraw as Attorney* (Case No. 15-11096; Dkt. # 6), which was subsequently granted by this Court without objection (Case No. 15-11096; Dkt. # 22).  On April 8, 2015, William Fava filed a *Notice of Appearance Combined with Request for Notices and Copies* (Case No. 15-11096; Dkt. # 8), assuming the role of counsel of record for the Debtor.  On April 9, 2015, Mr. Fava filed the Second Certificate (Case No. 15-11096; Dkt. # 16) on the Debtor's behalf.  According to the Second Certificate, the Debtor completed credit counseling on April 8, 2015.  Because 11 U.S.C. § 109 requires that a debtor obtain credit counseling within the 180-days *prior* to filing for bankruptcy protection, the Court entered an *Order Scheduling Show Cause Hearing for Failure to Obtain Pre-Petition Credit Counseling* (Case No. 15-11096; Dkt. # 21).  Pursuant to that order, a hearing was scheduled for, and held on, May 12, 2015.

### C. The May 12 Hearing

The Debtor and Mr. Fava appeared at the May 12 hearing. At that time, the Debtor testified as to the history of his 2015 Case.  When asked why the Second Certificate was filed, given that the seemingly valid First Certificate had already been filed, the Debtor testified that he never obtained credit counseling as alleged in the First Certificate.  More importantly, the Debtor testified that he had not even been aware that the 2015 Petition had been filed.  The Debtor unequivocally and credibly testified that he had not

participated in the filing of the 2015 Petition, that he had not authorized Mr.
Labovitz to file the 2015 Petition, that he never signed the 2015 Petition, that
he did not attend any pre-petition credit counseling session in regard to the
2015 Case, and that he was not even aware of the 2015 Case until several
weeks after its commencement when he consulted another attorney.    The
Debtor further testified that he had not been in Mr. Labovitz's office since
approximately December 2014 or January 2015.

As a result of the troubling testimony presented at the May 12 hearing,
the Court found it necessary to issue the Show Cause Order to Mr. Labovitz.

### D. Show Cause Order

The Show Cause Order provided a detailed report of the May 12
hearing, of the allegations made by the Debtor regarding Mr. Labovitz's
involvement in the 2015 Case, the statutory, rule and ethical violations
implicated by the alleged conduct, and the possible sanctions that could be
imposed on Mr. Labovitz if the Debtor's allegations proved to be true.    As a
result, Mr. Labovitz was afforded his due process rights as required by law.

With respect to the procedure in imposing sanctions, the Fifth Circuit
Court of Appeals opined in *Thomas v. Capital Sec. Services, Inc.*, 836 F.2d
866, 878 (5th Cir. 1988), that "a court's sanctioning decision may be affected
by due process considerations" but declined specifically to address the issue.
In interpreting *Thomas,* the Fifth Circuit reasoned that "[t]he advisory

committee's note to Rule 11 states that a judge's decision to impose Rule 11 sanctions 'obviously must comport with due process requirements,' and Jurisprudence has held similarly."[4] *Spiller v. Ella Smithers Geriatric Ctr.,* 919 F.2d 339, 346 (5th Cir. 1990)(quoting *Veillon v. Exploration Services, Inc.,* 876 F.2d 1197, 1201–02 (5th Cir. 1989); *Donaldson v. Clark,* 819 F.2d 1551, 1559–60 (11th Cir. 1987) (en banc)).  Accordingly, an attorney facing potential sanctions must be given notice and a hearing.  *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (procedural due process ordinarily requires notice and an opportunity to be heard).  In the Show Cause Order, the Court described the allegations leveled against Mr. Labovitz, and alerted him to the potential sanctions that might be imposed.  The Show Cause Order also provided that Mr. Labovitz would have an opportunity to respond to the possible sanctions and otherwise be heard on July 7, 2015.

After the Show Cause Order was entered, Mr. Labovitz sent the Court a letter (the "May 26 Letter")(Case No. 15-11096; Dkt. # 37), addressing both his absence from the May 12 hearing, as well as his involvement in the filing of the 2015 Petition and First Certificate.  In the May 26 Letter, Mr. Labovitz wrote the Court that he "received a call from Mrs. Dobbs, after the old case

---

[4] Because "Rule 9011 is substantially identical to Federal Rule of Civil Procedure 11" a court considering Rule 9011 sanctions may also take into account Rule 11 of the Federal Rules of Civil Procedure jurisprudence. *In re Pratt*, 524 F.3d 580, 586 (5th Cir. 2008).

8

was dismissed, stating that she had spoken to Mr. Dobbs and wanted [Mr. Labovitz] to file a new case so that [the Debtor] would not lose the larger piece of property that was his mother's." *Id.* Mr. Labovitz also informed the Court that "Mrs. Dobbs completed the credit counseling on the phone with [his] staff because she was unable to get to a computer in time for the filing." *Id.* Mr. Labovitz did not refute the allegation that the Debtor had not signed the 2015 Petition, taken the credit counseling course and/or signed the First Certificate. However, Mr. Labovitz did allege that the Debtor "was told both one and two days prior to the filing that it was being filed on his behalf." *Id.* The last assertion, in particular, was completely at odds with the Debtor's credible description of events at the May 12 hearing. At the May 12 hearing, the Debtor told the Court that he only learned of the bankruptcy filing several weeks after it was filed, and only because another attorney had discovered the pending 2015 Case.[5]

In the May 26 Letter, Mr. Labovitz also informed the Court that he was aware that the Debtor and Mrs. Dobbs had separated and that he repeatedly advised them to "obtain their own, separate divorce attorneys." *Id.* It was not clear from the letter if he advised the Debtor and Mrs. Dobbs that it would be inappropriate to represent them in any possible bankruptcy.

---

[5] The Debtor commenced a new chapter 13 case on May 13, 2015, through his new counsel, William Fava. (Case No. 15-11718-JDW).

9

Also attached to the May 26 Letter were two affidavits – one from Mrs. Dobbs and another from Mr. Labovitz's assistant, who had been involved with the filing of the 2015 case.  It is unnecessary and would be superfluous to reprint the content of those affidavits in their entirety, but it suffices to say that both affidavits corroborate the version of events as explained by Mr. Labovitz.

Absent from the May 26 Letter, however, is any explanation as to why Mr. Labovitz felt that it was appropriate to file a case for the Debtor (and only the Debtor) at the request of the Debtor's estranged wife.  Given the admitted wrong-doings confessed by Mr. Labovitz in the May 26 Letter and the discrepancies in the two versions of events surrounding the commencement of the 2015 case, the Court proceeded with the Show Causing hearing.

### E. Show Cause Hearing

At the July 7 hearing, Mr. Labovitz was provided an opportunity to explain his actions as they related to the filing of the 2015 Petition and First Certificate.  Mr. Labovitz appeared at the hearing, though he did not present any new evidence, nor did he bring any witness to support his proffer to the Court.

At the hearing, Mr. Labovitz repeated the same version of events as explained in the May 26 Letter, and confirmed the Debtor's version of events.

10

Mr. Labovitz explained that he had been counsel for both the Debtor and Mrs. Dobbs, but that sometime around November, 2014, he became aware that the couple had separated. He stated that he encouraged the couple to each obtain new counsel, a suggestion he allegedly repeated over the next few months.

Despite knowing that the couple had separated sometime in November 2014, and continuing to encourage the Debtor and Mrs. Dobbs to obtain new counsel, Mr. Labovitz remained involved in the Dobbs's 2013 Case. Mr. Labovitz also alleged that during the time of the Debtor and Mrs. Dobbs's separation, the Debtor began accusing Mr. Labovitz of having an affair with Mrs. Dobbs.[6] The Debtor reportedly would call Mr. Labovitz's office to level such accusations against him. Mr. Labovitz painted for the Court a clear picture of a conflicted and fractured relationship with the Debtor during this time.

Notwithstanding the stressed relationship between Mr. Labovitz and the Debtor, when the 2013 Case was dismissed on March 24, 2015, and Mrs. Dobbs appeared in his office requesting that a new case be filed for her estranged husband, Mr. Labovitz decided to proceed with the filing of the 2015 Petition and the forgery of the Debtor's signature on March 26, 2015.

---

[6] The Court is unaware of whether Mr. Labovitz's allegations of the Debtor's actions are true. The Court points out the allegations merely to show the total breakdown in the attorney-client relationship between Mr. Labovitz and the Debtor.

Given that the Debtor was unaware of the filing of the 2015 Case, he was not available to take the requisite credit counseling course or sign the necessary documents. At the Show Cause Hearing, Mr. Labovitz freely admitted that Mrs. Dobbs, not the Debtor, had taken the course, over the phone, using a member of Mr. Labovitz's staff as an intermediary.  He attempted to justify this action by saying that Mrs. Dobbs had taken the course in the Debtor's stead when the then-couple had filed a joint case in the past, as if that conduct had been permissive.  Mr. Labovitz did not fully explain why he felt as though the impersonation was appropriate, especially given that the 2015 case was not another joint case, but one solely for the Debtor.

Mr. Labovitz further reasoned to the Court that he felt as though filing for the Debtor was necessary to stay a pending foreclosure on the mobile home in which the Debtor lived.  He did not explain, however, why he felt as though the filing was a decision appropriately made by either the Debtor's estranged wife, or himself, rather than the Debtor.  At the conclusion of the hearing – given the gravity of the situation, allegations, and admissions – the Court took the matter under advisement.

## III.   CONCLUSIONS OF LAW

### A. Attorney Misconduct and Rule Violations

The Court concludes that in filing the 2015 Petition and First Certificate, Mr. Labovitz has acted in bad faith and has violated a myriad of

Bankruptcy Code provisions, Federal and Local Rules of Bankruptcy Procedure, and ethical rules imposed by the Mississippi Rules of Professional Conduct.

### 1. 11 U.S.C. § 526

Section 526 of the Bankruptcy Code outlines certain restrictions on actions undertaken by a debt relief agency.  Pursuant to 11 U.S.C. 101(12A), a bankruptcy attorney falls within the definition of a "debt relief agency." *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 232, 130 S.Ct. 1324, 1330, 176 L.Ed.2d 79 (2010); *Hersh v. United States ex rel. Mukasey*, 553 F.3d 743, 752 (5th Cir. 2008).  Subsection (a)(2) of § 526 prohibits an attorney from making:

> any statement, or counsel or advise any assisted person[7] or prospective assisted person to make a statement in a document filed in a case or proceeding under this title, that is untrue or misleading, or that upon the exercise of reasonable care, should have been known by such agency to be untrue or misleading.

11 U.S.C. § 526(a)(2).  Mr. Labovitz violated subsection (a)(2) by making untrue and misleading statements in both the 2015 Petition and the First Certificate, and then filing those documents with the Court. The most obviously untrue and misleading statement contained within those filings was that the Debtor had participated in the creation or signing of those

---

[7] "An 'assisted person' is someone with limited nonexempt property whose debts consist primarily of consumer debts. § 101(3)." *Milavetz*, 559 U.S. at 233.  The Debtor is clearly an "assisted person" under the statute.  Although §§ 526, 527 and 528 use the term "assisted persons," for purposes of ease and clarity the Court will use the term "debtor."

documents.  Also, by filing these documents, Mr. Labovitz made untrue and misleading statements and representations regarding the truthfulness, veracity, and proper purpose of those documents.

Furthermore, failure to disclose certain facts or information is also a violation of § 526(a)(2).  *See, e.g., In re Herrera*, 483 B.R. 222, 233 (Bankr. D. Colo. 2012) (holding that failing to disclose the source of an attorney fee received constituted making an untrue or misleading statement and was therefore a violation of § 526(a)(2)).  The Court finds that the failure to disclose that the Debtor was not involved in the bankruptcy case being filed on his behalf, that it was Mrs. Dobbs who took the credit counseling course, and that Mr. Labovitz forged the Debtor's signature, are all serious enough omissions so as to constitute violations of § 526(a)(2).

There is no need for the Court to consider whether "upon the exercise of reasonable care" Mr. Labovitz would have known of such misleading statements or untruths.  By his own admission to the Court, he was well aware that the Debtor did not sign the documents, nor participate in their creation.  Mr. Labovitz's violation of § 526 was intentional.  It does not take much legal acumen to understand that a forged signature is misleading.

## 2.  11 U.S.C. § 527

Section 527 of the Bankruptcy Code pertains to certain disclosures that debt relief agencies – including attorneys – are required to make.  First, it

14

requires that an attorney provide a "clear and conspicuous written notice," advising the debtor of certain filing and disclosure requirements, and alerting the debtor that failure to provide certain enumerated information may result in dismissal of the case and/or other sanction.  11 U.S.C. § 527(a)(2).  Second, § 527 requires that attorneys provide a statement with information about bankruptcy assistance services, so as to ensure that debtors are able to make an informed decision as to whether or not to file.  11 U.S.C. § 527(b).  Third, attorneys are directed either to obtain the debtor's required information, or supply the debtor with sufficient directions on how to acquire all of the information that a debtor is required to provide.  11 U.S.C. § 527(c).

As Mr. Labovitz did not meet with the Debtor prior to the filing of the 2015 case, nor subsequently inform the Debtor of his bankruptcy case, the Court finds that Mr. Labovitz failed to meet the mandatory disclosure requirements of § 527.  Most troubling to the Court is Mr. Labovitz's violation of subsection § 527(b).  While the Debtor was not a complete stranger to the bankruptcy process in general, he was completely uninvolved in the process that led to the initial filing of his 2015 Petition.  A debtor always should have the opportunity to consider information regarding the representation to be provided by the attorney.  "It is imperative that an attorney ensure, prior to filing a bankruptcy petition, that a potential debtor understands all of the consequences of filing bankruptcy and the responsibilities of being a

15

debtor…." *In re T.H.*, 529 B.R. 112, 139 (Bankr. E.D. Va. 2015).  That is not only a requirement of § 527(b), but a basic tenant of the bankruptcy process. No clear and conspicuous statement of information was provided to the Debtor.  As such, he deprived the Debtor of his opportunity and right to evaluate the action to be taken in his own case.

### 3.  11 U.S.C. § 528

Similarly, § 528 imposes several requirements on attorneys concerning retainer agreements formed with debtors.  The most important of these requirements is that a bankruptcy attorney execute a written contract with the debtor – *prior to that person's petition being filed* – which "explains clearly and conspicuously" the services to be provided and the cost of those services and terms of payment.  11 U.S.C. § 528(a)(1)(A) and (B).  The attorney is then required to provide a copy of the "fully executed and completed contract" to the debtor.  11 U.S.C. § 528(a)(2).  No such written contract was ever formed, executed, or even contemplated between Mr. Labovitz and the Debtor prior to the filing of the 2015 Petition.

### 4.  Fed. R. Bankr. P. 1008

Rule 1008 of the Federal Rules of Bankruptcy Procedure mandates that "[a]ll petitions, lists, schedules, statements and amendments thereto shall be verified or contain a sworn declaration as provided in 28 U.S.C. § 1746." Fed. R. Bankr. P. 1008.  Rule 1008 has been interpreted to mean that debtors

16

must sign all enumerated documents "as a means of not only authorizing the filing of those documents, but of verifying, under penalty of perjury, that they have reviewed the information contained therein and that it is true and correct to the best of their knowledge, information and belief." *In re Bradley*, 495 B.R. 747, 778 (Bankr. S.D. Tex. 2013) (citing *Briggs v. LaBarge (In re Phillips)*, 317 B.R. 518, 523 (B.A.P. 8th Cir. 2004); *In re Wenk*, 296 B.R. 719, 727 (Bankr. E.D. Va. 2002)).  A debtor's signature on a bankruptcy document represents that the information contained therein is truthful and accurate. Moreover, it represents that the information is truthful and accurate to a degree that only the debtor *himself* could verify.  "In other words, debtors must sign the petition, Schedules, and SOFA as a means of not only authorizing the filing of these documents, but of verifying, under penalty of perjury, that they have reviewed the information contained therein and that it is true and correct to the best of their knowledge, information, and belief." *In re Stomberg*, 487 B.R. at 807.  The importance of this rule cannot be overstated.  As perhaps best and most succinctly explained by the bankruptcy court in *In re Harrison*:

> It takes no elaborate discussion to point out the obvious that no one can grant authority to verify under oath the truthfulness of statements contained in the documents and to verify facts that they are true when the veracity of these facts are unique and only within the ken of the declarant which in this instance is the Debtor.

17

158 B.R. 246, 248 (Bankr. M.D. Fla. 1993).

Debtors' attorneys also have their own corresponding duty under Rule 1008 – "any attorney who files schedules and statements on a debtor's behalf makes a certification regarding the representations contained therein." *In re Withrow*, 405 B.R. 505, 512 (B.A.P. 1st Cir. 2009). The attorney's certification is not an "absolute guaranty of accuracy," but is instead an endorsement "based upon the attorney's best knowledge, information and belief, 'formed after an inquiry reasonable under the circumstances.'" *Id.* (quoting *Nosek v. Ameriquest Mortg. Co. (In re Nosek),* 386 B.R. 374, 381 (Bankr. D. Mass. 2008) *aff'd in part, vacated in part,* 406 B.R. 434 (D. Mass. 2009) *aff'd in part, modified in part,* 609 F.3d 6 (1st Cir. 2010)); Fed. R. Bankr. P. 1008.

Rule 1008 was violated since the Debtor did not sign the Petition or make certifications about the accuracy of the information contained therein. Furthermore, Mr. Labovitz has violated his own obligations under Rule 1008. Not only did he fail to conduct a reasonable inquiry into the accuracy of the documents, he outright fabricated them.  He did not meet with the Debtor; he did not ensure that the Debtor fully understood the ramifications of filing the 2015 Petition; he did not ensure that information he was providing the Court was accurate; he did not even file the documents under the direction of the Debtor.   His actions went above negligence, and instead amounted to intentional misconduct and bad faith.  By forging the signature of the Debtor,

18

Mr. Labovitz has undermined this most basic requirement and oath that the documents and information presented to the Court are truthful and accurate.

### 5. Fed. R. Bankr. P. 5005

Related to Rule 1008 is Federal Rule of Bankruptcy Procedure 5005(a)(2), which provides that "[a] document filed by electronic means in compliance with a local rule *constitutes a written paper* for the purpose of applying these rules...."  Fed. R. Bankr. P. 5005(a)(2) (emphasis added). A case filed electronically is identical to a paper case filed in person. *Wenk*, 296 B.R. at 724. "In filing a petition electronically, the practitioner represents to the court that he or she has secured an originally executed petition physically signed by debtor *prior to* electronically filing the case." *Id.* (emphasis original).

Mr. Labovitz is unable to produce the original executed petition, physically signed by the Debtor.  Mr. Labovitz filed documents for which he does not have – and admittedly has never had – the Debtor's "wet signatures."   No such documents exist. Given the directives of Rule 5005(a)(2), the electronic signatures affixed to the filings in question are tantamount to forgeries, just the same as if Mr. Labovitz had taken his own hand and pen to paper. *Stomberg*, 487 B.R. at 808 (holding that "electronically filing a document that purports to have the debtor's signature but which was not, in fact, signed by the debtor, is no different than

19

physically forging the debtor's signature on a paper document").   Rule 5005 has been violated by Mr. Labovitz's intentional misrepresentation that he had secured original, physical documents prior to electronically filing the case.

### 6.  Fed. R. Bankr. P. 9011

Rule 9011 sets forth the guidelines and rules governing the signing of papers filed with the court, representations made to the court, and sanctions for violations of those rules.   Subsection (b) provides (in pertinent summation) that by presenting a signed petition to the court, an attorney certifies to the court that to the best of the attorney's knowledge, formed after reasonable inquiry, that (1) the petition is not being presented for an improper purpose; (2) that the legal contentions therein are warranted by existing law; (3) that the allegations and factual contentions have evidentiary support; and (4) the denials of factual contentions are warranted.   Fed. R. Bankr. P. 9011.

"In determining whether a party has violated Rule 9011, the court need not find that a party who makes a false representation to the court acted in bad faith. 'The imposition of Rule 11 sanctions ... requires only a showing of objectively unreasonable conduct.'"   *In re Taylor*, 655 F.3d 274, 282 (3d Cir. 2011)(quoting *Fellheimer, Eichen & Braverman, P.C. v. Charter Tech., Inc.,* 57 F.3d 1215, 1225 (3d Cir.1995)).   The standard to be applied is

20

"reasonableness under the circumstances." *Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*, 498 U.S. 533, 551, 111 S. Ct. 922, 933, 112 L. Ed. 2d 1140 (1991).   Reasonableness is defined as an "objective knowledge or belief at the time of the filing of a challenged paper" that the claim was well-grounded in law and fact. *Jones v. Pittsburgh Nat. Corp.,* 899 F.2d 1350, 1359 (3d Cir. 1990).   Considering the facts and circumstances of the case at hand, the Court finds that Mr. Labovitz's actions and the filing of the falsified documents constitute objectively unreasonable conduct.   Further, given Mr. Labovitz's own admission that it was his intention to carry out such acts, there is clear and convincing proof that Mr. Labovitz acted in bad faith and willfully abused the judicial process. *In re Moore*, 739 F.3d 724, 729-30 (5th Cir. 2014).

First, it is not just objectively, but *obviously* unreasonable for Mr. Labovitz to believe that Mrs. Dobbs could file an individual, voluntary case on behalf of her estranged husband.   As a general rule, only the prospective debtor may file a bankruptcy petition on his or her own behalf.[8]  Pursuant to 11 U.S.C. § 301(a), a voluntary case "is commenced by the filing with the bankruptcy court of a petition under such chapter *by* an entity that may be a

---

[8] Although 11 U.S.C. §303 provides a mechanism by which an individual may be forced into bankruptcy, none of the requirements for filing an involuntary petition were met in this case.   Furthermore, Mr. Labovitz made no attempt to claim this was an involuntary bankruptcy, defective or otherwise.   Rather he presented the 2015 Petition to the Court as if it had been prepared at the Debtor's direction.   Further, there was no allegation that the Debtor was incompetent or that the 2015 case was filed under Fed. R. Bankr. P. 1004.1.

debtor under such chapter." *Id.* (emphasis supplied).    By their very nature, *voluntary* bankruptcy cases must be undertaken on the debtor's *own volition.*

Mr. Labovitz attempted to justify his deviation from this rule by explaining that in past cases, he had dealt with Mrs. Dobbs, and not the Debtor.  However, while that may have been the case in the previous joint filings, the 2015 Case was not filed as a joint bankruptcy – it applied solely to the Debtor, and not Mrs. Dobbs.  Even still, if this were a joint case, Mr. Labovitz would have still needed to speak with the Debtor to confirm that it was also his intention to file for bankruptcy protection.  At least as much is required by his due diligence obligation under Rule 9011.  "[A]n attorney needs to know for certain that his client wishes to file for bankruptcy before a petition is filed." *In re Phillips*, 433 F.3d 1068, 1071 (8th Cir. 2006).  That Mr. Labovitz would allow Mrs. Dobbs to speak and act for the Debtor is even more troubling given that Mr. Labovitz testified to the Court that he had known for several months that the Debtor and Mrs. Dobbs had separated.[9]

---

[9] At the July 7 hearing, when the undersigned asked why Mr. Labovitz felt it was appropriate for Mrs. Dobbs to act for the Debtor, given that Mr. Labovitz knew they were estranged, Mr. Labovitz told that Court that he thought they had reconciled. The Court finds this answer to be unsatisfactory for several reasons.  First, even if true, it is insufficient grounds for the actions taken by Mr. Labovitz.  Second, in documents filed as recently as March 18, 2015, in the 2013 Case, Mr. Labovitz had made reference to the parties' separation, and stated to the Court that the parties were "going to be filing for divorce." *See Motion to Reconsider Order Lifting Stay and Abandoning Property of the Estate* (Case No. 13-10662, Dkt. # 109).  The Court finds it implausible that in the eight days between telling the Court that the Debtor and Mrs. Dobbs were planning on divorcing, and when the 2015 Petition was filed, Mr. Labovitz had a complete change of opinion and belief as to whether or not the debtors' marriage would succeed.  Given that the Debtor and

Second, although Mr. Labovitz defended forging signatures and filing the 2015 Petition and First Certificate by claiming that he believed it was necessary to stop the imminent foreclosure of the Debtor's home, the Court is not persuaded by his argument.   "[T]he fact that the client's home is scheduled for an imminent foreclosure does not excuse the reasonable inquiry requirement of Rule 9011(b)." *In re Tran*, No. 14-11837, 2014 WL 5421575, at *7 (Bankr. E.D. Va. Oct. 17, 2014).   Although the Court may be sympathetic to the plight of a debtor faced with losing his or her home, "[t]he Court does not consider even the most exigent of circumstances as a justification for an attorney to disregard or ignore the duties of care and due diligence...." *In re T.H.*, 529 B.R. at 128.   As such, the threat of foreclosure does not supersede Mr. Labovitz's duties of care and due diligence to ensure that it was the Debtor's intention to be in bankruptcy.

Third, there was no reasonable inquiry into the accuracy of the information presented by the Debtor in the Petition.   "There can be no 'inquiry reasonable under the circumstances' where the attorney has not met with the client prior to filing the petition." *In re Tran*, 2014 WL 5421575 at *7.   Mr. Labovitz cannot certify the Petition and First Certificate were not

---

Mrs. Dobbs remained separated, it seems more plausible that Mr. Labovitz was simply trying to justify allowing Mrs. Dobbs to authorize the filing of the 2015 Petition on the Debtor's behalf.

filed for an improper purpose, as the very act of filing falsified and fraudulent documents is improper.

Fourth, without the Debtor having collaborated in the preparation of the documents, it would be impossible for Mr. Labovitz to certify that any factual contentions were warranted by existing law, or supported by evidence. Mr. Labovitz filed documents for which he has never had the Debtor's actual signature. Thus, the Debtor never verified the accuracy or truthfulness of the information contained therein. Accordingly, Mr. Labovitz violated Rule 9011(b) by falsely representing to the Court that "the allegations and other factual contentions have evidentiary support." Fed. R. Bankr. P. 9011(b)(3); *see also Phillips,* 317 B.R. at 524 (holding that "the petition [the attorney] filed did not have the debtor's original signature and therefore lacked a verification of the facts. With no verification, the factual contentions have no evidentiary support and thus the petition violates Rule 9011(b)(3).").

Lastly, "'electronically filing a document bearing an electronic signature that was not actually or validly signed' constitutes a forgery amounting to a Rule 9011 violation." *In re Stomberg*, 487 B.R. at 808 (quoting *Phillips,* 317 B.R. at 523–24); *see also In re Ludwick*, 185 B.R. 238 (W.D. Mich. 1995)(suspending attorney for forging client signatures in violation of Rule 9011); *In re T.H.,* 529 B.R. at 141 (finding that attorney violated Rule

24

9011 by filing an unauthorized Petition, for which attorney did not have debtor's signature, and which contained inaccurate representations); *In re Alvarado*, 363 B.R. 484 (Bankr. E.D. Va. 2007)(finding Rule 9011 violation where attorney filed second case without debtor's consent and/or signature). Mr. Labovitz is an experienced bankruptcy attorney and must know that forging a debtor's signature, and presenting it to the Court as if it were a debtor's authentic signature, is never objectively reasonable, under any circumstances.   The actions of Mr. Labovitz evidence bad faith and an abuse of the judicial system.   Since Mr. Labovitz filed the 2015 Petition and First Certificate without the Debtor's knowledge, any supposed certifications made as required by Rule 9011 are meaningless.

### 7.  Local Rule Violations

Mr. Labovitz has also violated several of the Uniform Local Bankruptcy Rules for the Northern and Southern Districts of Mississippi (the "Local Rules"), namely:

(1) Rule 1001-1(g): Requiring that all attorneys practicing before this Court acquaint themselves with the Local Rules, failing which they become exposed to sanctions for violations of the Local Rules.

(2) Rule 4002-1(a) and (b): Outlining the duties of a debtor's attorney before and after the filing of the petition, including the review of petition, schedules, and statement of financial affairs to determine that the documents

have been completed and all information provided by the debtor has been accurately listed, and that the debtor and attorney have signed the documents in all appropriate places. After the filing of the petition, Local Rule 4002-1(b) also requires that a debtor's attorney maintain a certain level of communication with the debtor, as well as oversight and management of the case;

(3) Rule 9011-1(a): Requiring that documents filed with the Court be signed in accordance with the relevant procedural standards (Local Rule 5005-1), and mandating that the "filing of any document… shall constitute the attorney's signature for purposes of signing the document under Fed. R. Bankr. P. 9011(a) and any other applicable authority relating to signatures." Miss. Bankr. L. R. 9011(a)(2).

It is unnecessary to detail all the ways in which Mr. Labovitz has violated the Local Rules. His transgressions under the Local Rules are not only repetitive of his violations of the Federal Rules of Bankruptcy Procedure, but are obvious. By filing the 2015 Petition without the Debtor's knowledge, Mr. Labovitz abdicated the duties imposed on him by Rule 4002-1. It would not be inaccurate to say that Mr. Labovitz "failed to review" the 2015 Petition and First Certificate for correctness, or to ensure that the documents were completed and all information provided by the debtor was accurately listed. Given that the 2015 Petition was filed without the Debtor's knowledge or

26

participation, a review of the information would be meaningless. The communication and oversight between attorney and debtor leading up to and following the filing of the 2015 Petition were nonexistent. As an overarching matter, Mr. Labovitz violated Local Rule 1001-1(g) by failing to familiarize himself and comply with the Local Rules of this Court.

### 8. Rules of Professional Conduct and Candor to the Court

Mr. Labovitz's actions also constitute a violation of several of the Mississippi Rules of Professional Conduct (the "MRPC"). The Court generally views such violations (and sanctions therefor) to fall within the province of the Mississippi Bar. However, when considering attorney misconduct and Rule 9011 violations, a bankruptcy court may also take into consideration the Rules of Professional Conduct of the state in which the court sits. *See, e.g., In re Zuniga*, 332 B.R. 760, 772 (Bankr. S.D. Tex. 2005). The applicable MRPC rules are as follows:

(1) Rule 1.1 – Competence: requiring that a lawyer "provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

(2) Rule 1.2 – Scope of Representation: requiring (in part) that a lawyer abide by a client's decisions concerning the objectives of

representation and should consult with the client as to the means by which they are to be pursued.

(3) Rule 1.3 – Diligence: requiring that a lawyer act with "reasonable diligence and promptness in representing a client."

(4) Rule 1.4 – Communication: requiring that an attorney "keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information," and further mandating that an attorney "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

(5) Rule 3.3 – Candor Toward the Tribunal: prohibiting an attorney from knowingly making false statements to the Court, from failing to disclose certain relevant information, and from offering evidence that the lawyer knows to be false.

(6) Rule 8.4 – Violation of the MRPC: which provide, in part, that it is professional misconduct for an attorney to violate or attempt to violate the MRPC, or to engage in conduct prejudicial to the administration of justice.

As a seasoned bankruptcy attorney, Mr. Labovitz does in fact possess the knowledge and skills necessary to guide a debtor through bankruptcy. However, he has chosen not to exercise such abilities and competence in the present case. Although the parameters of "competent representation" may be somewhat vague in certain circumstances, no definition of "competence"

28

includes the forging of signatures or filing of bankruptcy for a client without the individual's knowledge or consent.  Mr. Labovitz has abandoned his duties as required under Rule 1.1.

By placing the Debtor in bankruptcy without his knowledge, Mr. Labovitz has also violated Mississippi Rules of Professional Conduct 1.2, 1.3 and 1.4.  First, placing the Debtor in a bankruptcy case without the Debtor's knowledge or consent is a clear departure from Mr. Labovitz's obligation to allow his client to determine the objectives of representation and means for pursuing those objectives.  Second, Mr. Labovitz's actions exhibit no signs of reasonable diligence.  "Reasonable Diligence" is defined as "[a] fair degree of diligence expected from someone of ordinary prudence under circumstances like those at issue."  Black's Law Dictionary (10th ed. 2014).  Under the circumstances, any attorney would know that it was necessary to at least *speak* with the Debtor prior to commencing a new case.  Further, Mr. Labovitz violated Rule 1.4 by failing to keep the Debtor reasonably informed of the status of his case.  In this instance, he failed to inform the Debtor that he was in a new bankruptcy case at all.  By not communicating with the Debtor, Mr. Labovitz also failed to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."  By taking action without the Debtor's knowledge or consent,

Mr. Labovitz robbed the Debtor of his right and ability to make informed decisions.

Lastly, by forging signatures and knowingly filing falsified documents with the Court, Mr. Labovitz has renounced any notion of candor to this Court, thereby violating Rule 3.3.  The sum of these violations is, of course, itself a violation of Rule 8.4.

### B. Bankruptcy Court's Authority to Sanction

Having established Mr. Labovitz's myriad violations in this case, the Court turns to the question of what actions may be taken by this Court.  This Court's authority to impose sanctions is derived from multiple sources: (1) 11 U.S.C. § 105; (2) 11 U.S.C. 526(a)(5); (3) Federal Rule of Bankruptcy Procedure 9011(c); (4) the Local Rules; and (5) the inherent power of federal courts to maintain order in the cases before those courts.

Pursuant to 11 U.S.C. § 105, "[a] bankruptcy court has statutory authority to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code.'" *Law v. Siegel*, 134 S. Ct. 1188, 1194, 188 L. Ed. 2d 146 (2014).  "The clear language of 11 U.S.C. § 105(a) grants this Court significant equitable powers as well as latitude in framing the relief necessary to carry out both the specific provisions of the statute as well as its philosophical underpinnings."  *In re Ludwick*, 185 B.R. at 245.

30

Similar to § 105 – though specific to certain Bankruptcy Code violations in this particular case – 11 U.S.C. § 526(a)(5) "permits a bankruptcy court to 'impose an appropriate civil penalty' against an attorney who it finds intentionally violated § 526(a)(2)." *Parker v. Jacobs*, 466 B.R. 542, 548-49 (M.D. Ala. 2012).   Further, (though also particular to the facts, circumstances, and rules violated in the case at hand) subsection (c) of Rule 9011 provides that:

> If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

Fed. R. Bankr. P. 9011(c).

The Court's authority to impose sanctions is further supported by the Local Rules applicable in this Court.  Rule 1001-1(g) provides that:

> All attorneys practicing before the bankruptcy courts for the Northern and Southern Districts of Mississippi shall acquaint themselves with these Local Rules.  Attorneys shall be subject to appropriate sanctions for failure to comply with these Local Rules, and *nothing contained herein shall limit the authority of the bankruptcy courts to impose appropriate sanctions for failure to comply with these Local Rules, Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or other applicable law*.

Miss. Bankr. L.R. 1001-1(g) (emphasis supplied).

This statutory and regulatory authority reaffirms the long-recognized inherent power of federal courts to control the parties that appear before it. As the United States Supreme Court held in *Chambers v. NASCO, Inc.*,

> It has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates."

501 U.S. 32, 43, 111 S. Ct. 2123, 2132, 115 L. Ed. 2d 27 (1991)(internal citations omitted); *see also Knight v. Luedtke (In re Yorkshire, LLC),* 540 F.3d 328, 332 (5th Cir. 2008) (holding that a bankruptcy court has authority under Rule 9011(c), 11 U.S.C. 105(a), and applicable case law to sanction those attorneys which appear before it.). Although 11 U.S.C. §§ 105 and 526, Federal Rule 9011(c), and Local Rule 1001-1(g) all provide possible avenues for sanction, a court's inherent power "can be invoked even if procedural rules exist which sanction the same conduct, for these rules are not substitutes for the inherent power." *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995). Rather, a court's "'inherent power extends to a full range of litigation abuses' and 'must continue to exist to fill in the interstices.'" *Peer v. Lewis,* 606 F.3d 1306, 1314 (11th Cir. 2010) (quoting *Chambers*, 501 U.S. at 46). "A specific finding of bad faith, however, must 'precede any sanction under the court's

32

inherent powers.'"[10] *United States v. Stoneberger*, 805 F.2d 1391, 1393 (9th Cir. 1986)(quoting *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767, 100 S.Ct. 2455, 2465, 65 L.Ed.2d 488 (1980)).  Further, "a decision to invoke the inherent power to sanction requires a finding of 'bad faith or willful abuse of the judicial process….'" *Moore*, 739 F.3d at 729.  For the reasons explained at length above, the Court finds that clear and convincing evidence shows such bad faith and abuse of the judicial process, thereby enabling it to invoke its inherent powers as described in *Chambers*.

This Court's authority to impose sanctions is also not diminished by the dismissal of the Debtor's 2015 bankruptcy case in which the misconduct occurred.  *See, e.g., Garrett v. Coventry II DDR/Trademark Montgomery Farm, L.P. (In re White-Robinson)*, 777 F.3d 792, 795-96 (5th Cir. 2015)(holding that bankruptcy court retained jurisdiction to enforce attorney sanctions despite debtor's receipt of discharge); *In re T.H.*, 529 B.R. at 134 (holding that "[t]he Court's jurisdiction to decide the issue of sanctions is not affected by the status of a case, whether dismissed or closed, or by whether a discharge has been entered."); *In re Henderson*, 360 B.R. 477, 484 (Bankr. D.S.C. 2006)("[t]he fact that these cases are closed does not divest this Court of jurisdiction as jurisdiction is not dependent on the technicality of a case

---

[10] By placing a party in bankruptcy without the individual's knowledge or consent, forging that individual's signature and filing falsified documents with the Court, Mr. Labovitz clearly acted in bad faith.

being 'open.'").  To conclude otherwise would lead to an absurd and illogical result, incentivizing attorneys to allow cases in which they had committed misconduct to be dismissed, thereby permitting those attorneys "to escape review of their performance based upon their very failure to provide adequate services to debtors which resulted in the dismissal of the case." *Henderson*, 360 B.R. at 484.  Accordingly, a review of Mr. Labovitz's conduct in the now-dismissed case is well within the Court's jurisdictional province.

Despite a bankruptcy court's well-settled authority to issue sanctions and regulate the conduct of attorneys, it is not a power to be wielded hastily. "Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." *Roadway Exp., Inc. v. Piper*, 447 U.S. at 764, 100 S. Ct. at 2463.  In ensuring that its powers are exercised with such restraint and discretion, a court must consider the range of its "ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44-45.  Though the powers and controls at the court's disposal may be many and varied, a bankruptcy court must nonetheless impose its sanctions using "the least restrictive sanction necessary to deter the inappropriate behavior...." *Harris v. First City Bancorporation of Tex., Inc. (In re First City Bancorporation of Tex., Inc.)*, 282 F.3d 864, 867 (5th Cir.2002).  "The sanction levied must thus be commensurate with the egregiousness of the conduct." *In re Downs*, 103 F.3d

34

472, 478 (6th Cir. 1996).  All the same, "[t]he Court takes very seriously its 'duty to protect an unsuspecting public from attorneys who fail to perform competently and professionally…'" *In re T.H.*, 529 B.R. at 133 (quoting *In re Smith*, No. 13-31565, 2014 WL 128385, at *7 (Bankr. E.D. Va. Jan. 14, 2014)).

Considering the need to balance restraint with protection of the public and the integrity of the courts, this Court finds that the most severe sanctions are warranted and necessary in this case.

### C. Repeated Misconduct

Rule 9011(c)(2) – from which the Court draws at least part of its authority to sanction Mr. Labovitz – charges the Court to impose sanctions for violations of Rule 9011 that are "limited to what is sufficient to deter repetition of such conduct…." *Id.*  At the same time, the Court has "wide discretion" to formulate a sanction that it deems appropriate.  *Parker*, 466 B.R. at 548 (M.D. Ala. 2012)(quoting *In re Brooks-Hamilton*, 400 B.R. 238, 253 (B.A.P. 9th Cir. 2009)).  Consequently, in determining what would be an appropriate sanction to deter the repetition of Mr. Labovitz's actions, the Court cannot ignore Mr. Labovitz's record of misconduct and the ineffectiveness of progressively severe sanctions to date.

### 1.  Debtor and Mrs. Dobbs's Case History

The transgressions discussed above are not the first of such behavior exhibited by Mr. Labovitz with regard to the Debtor and Mrs. Dobbs.  In their prior case, Mr. Labovitz exhibited several acts of carelessness, incompetence, and a flagrant disregard for his obligations as an attorney.

The 2013 Case – the dismissal of which precipitated the filing of the 2015 Case – was itself fraught with problems.  The case was commenced on February 22, 2013 (Case No. 13-10662; Dkt. # 1).  On April 19, 2013, the Bank filed its Motion to Lift, relating to certain real property in which the Bank had a security interest (the "Subject Property").  Despite the response deadline of May 7, an objection to the Motion to Lift was not filed until May 20. (Case No. 13-10662; Dkt. # 34).  That same day, the Debtor and Mrs. Dobbs also filed an adversary proceeding seeking to set aside the deed of trust held by the Bank on the Subject Property.  (A.P. Case No. 13-01045).  That adversary proceeding was ultimately dismissed because the Debtor and Mrs. Dobbs were not entitled to the relief sought.  (A.P. Case No. 13-01045, Dkt. # 23).

The Bank's claims having been sorted out through that adversary proceeding, and that adversary proceeding having then been dismissed, the Bank filed the Second Motion to Lift on the Subject Property.  Mr. Labovitz filed no response to the Second Motion to Lift.  Accordingly, on January 12,

2015, the Bank's Motion to Lift was granted (the "Order Lifting Stay")(Case No. 13-10662, Dkt. # 105).

On January 21, 2015 – nine days after the Order Lifting Stay was entered – Mr. Labovitz filed another adversary proceeding (the "Second Adversary Proceeding")(A.P. Case No. 15-01006, Dkt. # 1).   Through the Second Adversary Proceeding, Mr. Labovitz asserted that the Subject Property was essential to the Debtor's plan payments and asked that the Order Lifting Stay be set aside.  Mr. Labovitz attempted to justify the lack of response to the Second Motion to Lift by explaining that, "[he had] been sick since mid-fall 2014; and [had] 3 major surgeries since the end of November 2014.  [His] first full partial [*sic*] day back in the office was January 14, 2015."  *Id.*

Addressing this explanation for a moment, the Court finds it necessary to note that this was the first time that the Court had heard that Mr. Labovitz's health prevented him from fulfilling his duties as counsel to the Debtor and Mrs. Dobbs.  No requests for extensions or for special exceptions had been made.  Also, although the Court can appreciate that illness may justifiably take a lawyer away from his work, Court records show that during the period in which Mr. Labovitz was allegedly too ill to even *minimally* tend to the 2013 Case, he still managed to file eleven new bankruptcy cases in this

Court alone.[11]   The Court finds it suspicious and disingenuous for Mr. Labovitz to blame his failure to even respond to the Second Motion to Lift on illness, when he managed to work on cases for which he was receiving new attorney fees.

The same day that Mr. Labovitz commenced the Second Adversary Proceeding, he also filed a *Motion for Preliminary Injunction* (A.P. Case No. 15-01006, Dkt. # 2), and a *Motion to Expedite Hearing on the Motion for Preliminary Injunction* (the "Motion to Expedite")(A.P. Case No. 15-01006, Dkt. # 3).   The next day, the Court granted the Motion to Expedite (the "Order Granting Expedited Hearing")(A.P. Case No. 15-01006, Dkt. # 5), and set a hearing for February 4, 2015.   Through that order, Mr. Labovitz was specifically and clearly directed to serve, "by the most expeditious method(s) possible," a copy of the Motion for Preliminary Injunction and the Order Granting Expedited Hearing upon the Bank, counsel for the Bank, and the chapter 13 case trustee.

By February 4, service had still not been accomplished as directed. Accordingly, the hearing was continued to March 3, 2015 (A.P. Case No. 15-01006, Dkt. # 7).   On March 2, 2015, one day before the scheduled hearing,

---

[11] Mr. Labovitz is listed as counsel in the following cases, all filed between October 14, 2014, and January 21, 2015 (the date on which the second adversary proceeding was filed): Case No. 14-13856; Case No. 14-14138; Case No. 14-14173; Case No. 14-14410; Case No. 14-14415; Case No. 14-14511; Case No. 14-14523; Case No. 15-10025; Case No. 15-10034; Case No. 15-10041; Case No. 15-10124.

Mr. Labovitz filed a Certificate of Service relating to the Motion for Preliminary Injunction and Order Granting Expedited Hearing. However, it indicated that only the Bank had been served, and not all parties as directed. The hearing was again rescheduled, this time for March 25, 2015. By this time, the Bank had also filed a *Rule 7012 Motion to Dismiss* (the "Motion to Dismiss")(A.P. Case No. 15-01006, Dkt. # 9), which was then also set for hearing on March 25, 2015.

Despite the fact that Mr. Labovitz had *still* not accomplished proper service, the case was called on March 25 as scheduled. Neither Mr. Labovitz nor the debtor-plaintiffs appeared as required. Accordingly, the Motion for Preliminary Injunction was denied for want of prosecution, and the Motion to Dismiss was granted (A.P. Case No. 15-01006, Dkts. # 16 and 18). By the time that the Motion to Dismiss was granted – thirty-eight days after it had been filed – Mr. Labovitz had not filed any response.

After all of the time and effort (though misguided and wasteful) to stay the foreclosure of the Subject Property, the 2013 Case was dismissed on March 24, 2015 for failure to file an amended plan pursuant to the December 23 Order (Case No. 13-10662-JDW; Dkt. # 99). That order gave Mr. Labovitz 60 days (or until February 21, 2015) in which to file an amended plan and cure certain deficiencies. Again, Mr. Labovitz failed to fulfill his obligations in a timely manner.

Mr. Labovitz's subsequent mishandling of the 2015 Case, after the dismissal of the 2013 Case, is detailed above, and needs no further exploration.

### 2. Mr. Labovitz's Misconduct in this Court

The Court must note that Mr. Labovitz has a similar pattern of misconduct before this Court, outside of the Debtor's cases. This Court has had to address Mr. Labovitz's actions on numerous occasions. The Court's attempts to address the problems have grown from off-the-record chambers consultations, to admonishment in open court, and finally to fee disgorgement and sanctions. The increase in the severity of sanctions has not corrected Mr. Labovitz's negligent or careless conduct. In the past four years, Mr. Labovitz has been the subject of five Orders to Show Cause that relate directly to his behavior.[12] At one point, Mr. Labovitz was directed to appear and show cause why sanctions should not be imposed for his conduct in a particular case, but the hearing had to be continued because *he had a previously scheduled show cause hearing in the Southern District of Mississippi*. Mr. Labovitz's filings, as well as entire cases, are frequently dismissed for his failure to file a necessary certificate of service, or to file a

---

[12] *See* Bankr. Case Nos. 11-10929; 11-10337 (2); 13-12738 and 15-11096.

response to a pending motion to dismiss.[13]    It is also not uncommon for Mr. Labovitz simply to fail to appear at a scheduled hearing or to show up unprepared.[14]

The first instance of misconduct that the Court was forced to address was when Mr. Labovitz freely admitted that he had filed a baseless response to a motion, when he knew he had no legal basis for the arguments advanced – itself a Rule 9011 violation.  Given that the Court is currently faced with similar Rule 9011 violations, it is clear that the Court's efforts to deter such violations have been unsuccessful.

### 3.    Sanctions Imposed by the Mississippi Bar

In addition to having been faced with numerous reprimands by this Court,[15] Mr. Labovitz has also been issued numerous private[16] and public reprimands, as well as a suspension by the Mississippi Bar.

---

[13] *See, e.g.*, Case No. 13-12738, Dkt. # 37 (Order Granting Trustee's Motion to Dismiss Case after no response filed by the Debtor); Case No. 14-11531, Dkt. # 9 (Order Dismissing Case for failure to file required documents); Case No. 14-13348, Dkt. # 63 (Order Dismissing Objection to Claim for failure to file a certificate of service on hearing)

[14] *See, e.g.,* Case No. 13-12738, Dkt. # 29 (Order directing Mr. Labovitz to appear and show cause why sanctions should not be imposed for failing to appear at a scheduled hearing)

[15] These reprimands extend well back into the tenure of the Honorable David W. Houston, III.

[16] As the Mississippi Bar chose to make these reprimands in private, no details are divulged herein.

41

### a. 1999 Professional Conduct Case

Mr. Labovitz's first public reprimand by the Mississippi Bar was issued in 1999 (the "1999 Professional Conduct Case"). *The Mississippi Bar v. Labovitz*, No. 98-23-1 (Miss. Jan. 26, 1999). In that instance, a former client of Mr. Labovitz filed a formal complaint after Mr. Labovitz failed, on multiple occasions, to respond to opposing counsel's request for discovery responses, failed to respond to multiple motions filed by the defendant-opposite, and failed to appear at necessary hearings. When his negligence was addressed in the personal injury case, Mr. Labovitz attempted to explain that physical and personal problems had interfered with his representation of Mr. Palmer. *Id.* at *3.

As a result of Mr. Labovitz's neglect, Mr. Palmer's personal injury case was dismissed. In the 1999 Professional Conduct Case, the Committee on Professional Responsibility of the Mississippi Bar (the "Professional Responsibility Committee") found that Mr. Labovitz's actions amounted to a violation of Rules 1.2, 1.3, 1.4, 1.16, 3.2, 8.1(b) and 8.4(a and d) of the MRPC. In addition to those rule violations also made in the Debtor's case and enumerated above, the Professional Responsibility Committee found that Mr. Labovitz violated (1) rules regarding conditions under which an attorney should decline or terminate representation, (2) rules requiring that an attorney make reasonable efforts to expedite litigation, and (3) rules

prohibiting an attorney from failing to respond to a demand for information in connection with a disciplinary matter. As punishment, Mr. Labovitz was issued a Public Reprimand and ordered to pay to the Mississippi Bar the costs incurred in the investigation of the matter.

### b. 2007 Professional Conduct Cases

Mr. Labovitz's next public reprimand from the Professional Responsibility Committee came in 2007, when the Mississippi Bar filed an informal complaint against Mr. Labovitz for the violation of Rules 5.3(a) and 5.5(b) of the MRPC for allowing a non-member of the Mississippi Bar to practice law in the state (the "2007 Professional Conduct Case"). *The Mississippi Bar v. Labovitz*, No. 06-527-2 (Miss. Oct. 23, 2007). In the 2007 Professional Conduct Case, Mr. Labovitz was found to have violated Rules 5.3 and 5.5 by directing a Tennessee attorney, working for Mr. Labovitz, to attend a deposition in a Mississippi lawsuit, despite the fact that the attorney was not licensed in the state. The Professional Conduct Committee found that Mr. Labovitz not just assisted a non-lawyer in the practice of law, but explicitly directed him to do so.

In the Opinion for the 2007 Professional Conduct Case, the Professional Responsibility Committee noted that Mr. Labovitz alleged several mitigating factors excusing his conduct, including the passing of his father and an injury

to his Achilles tendon.   The Committee also observed that both of those events took place approximately 6 months before the deposition in question.

Of course, the Professional Responsibility Committee considered other aggravating factors as well – such as the 1999 Professional Conduct Case and three other private reprimands.   Based on the totality of the circumstances, the Professional Responsibility Committee found that another Public Reprimand was necessary.   Again, Mr. Labovitz was required to pay the costs incurred in pursuing the investigation of the 2007 Professional Conduct Case.

### c. 2008 Professional Conduct Cases

One year later, the Complaint Tribunal of the Supreme Court of Mississippi (the "Complaint Tribunal") issued a *Findings of Fact, Conclusions of Law and Judgment of the Complaint Tribunal* (the "2008 Professional Conduct Case"), addressing the same facts and circumstances which had given rise to the 2007 public reprimand by the Professional Responsibility Committee. *Mississippi Bar v. Labovitz*, No. 2007-B-2163 (Miss. May 20, 2008).   Reviewing that same information, the Complaint Tribunal found that Mr. Labovitz's actions constituted clear violations of not only the MRPC, but also the Mississippi Rules of Appellate Procedure (the "MRAP"), as well as the holding in *In re Williamson*, 838 So. 2d 226 (Miss. 2002), wherein the Supreme Court of Mississippi delineated the instances in which a foreign

attorney would be deemed to have improperly "appeared" in an in-state matter. *Id.* at *7-8.

In fashioning appropriate sanctions, the Complaint Tribunal considered the nine factors outlined in *Liebling v. The Mississippi Bar*, 929 So. 2d 911 (Miss. 2006):

1. Nature of misconduct involved;
2. The need to deter similar misconduct;
3. Preservation of dignity and reputation of the legal profession;
4. Protection of the public;
5. Sanctions imposed in similar cases;
6. The duty violated;
7. The lawyer's mental state;
8. Actual and potential injury resulting from the misconduct; and
9. Existence of aggravating or mitigating factors.

*Id.*

Additionally, the Complaint Tribunal considered the American Bar Association (the "ABA") Standards for Imposing Lawyer Sanctions, which include:

1. The duty violated;
2. The lawyer's mental state;
3. The actual and potential injury resulting from the misconduct; and
4. The existence of aggravating or mitigating factors.

*The Mississippi Bar v. Labovitz*, No. 2007-B-2163 at *9 (Miss. May 20, 2008) (citing *L.S. v. Mississippi Bar*, 649 So.2d 810, 815 (Miss. 1997)).

Considering the seriousness of the violations, the ineffectiveness of Mr. Labovitz's past public and private reprimands, and the need to deter future

45

conduct, the Complaint Tribunal found it appropriate to impose further sanctions. Accordingly, Mr. Labovitz was issued another public reprimand, as well as a three-year probationary period. The Complaint Tribunal ordered that if, during his probation, Mr. Labovitz was found to have violated any part of the MRPC, he would be suspended from the practice of law for three (3) years. Furthermore, Mr. Labovitz was ordered to complete twelve (12) hours of Continuing Legal Education, and was required to take the Multistate Professional Responsibility Examination. Lastly, Mr. Labovitz was ordered to notify all clients with active matters pending of the public reprimand and probation.

### d. 2013 Professional Conduct Case

In January 2013, the Complaint Tribunal entered an *Amended Agreed Opinion and Judgment*, reflecting the terms of an agreement reached between the Mississippi Bar and Mr. Labovitz, regarding Mr. Labovitz's violation of Rules 1.2(a), 1.3, 1.4(a), 1.16(d), 5.3(b), (c), 5.5(b), and 8.4 (a) and (d) of the MRPC. *The Mississippi Bar v. Labovitz*, No. 2012-B-1233 (Miss. Jan. 30, 2013)(the "2013 Professional Conduct Case"). The basis for the sanctions included (1) (again) assisting an attorney not licensed in Mississippi to practice law in-state, (2) failure to timely file certain documents, resulting in the dismissal of a client's case, and (3) failure to inform said client of the dismissal.

46

Although the Complaint Tribunal is somewhat brief in its analysis, it does reiterate application of the *Liebling* factors listed above, as well as a register of Mr. Labovitz's history of disciplinary matters. As noted in the 2013 Professional Conduct Case, between 1997 and 2013, Mr. Labovitz was issued three private reprimands, two public reprimands, and one informal admonition. *Id.* at * 3. Considering his actions and disciplinary record against the *Liebling* factors, the Complaint Tribunal elected to accept the agreement reached between the Mississippi Bar and Mr. Labovitz, imposing a thirty (30) day suspension from the practice of law, effective December 6, 2012. He was again required to provide notice to his clients of the suspension. Mr. Labovitz's practice and procedures since the 2013 Professional Conduct Case and suspension have not improved.

### D. Sanctions to be Imposed

The ABA Standards for Imposing Lawyer Sanctions dictate consideration of four criteria: (1) whether the duty violated was to a client, the public, the legal system, or the profession, (2) whether the attorney acted intentionally, knowingly, or negligently, (3) the seriousness of the actual or potential injury caused by the attorney's misconduct, and (4) the existence of aggravating and mitigating factors. *In re Sealed Appellant*, 194 F.3d 666, 673 (5th Cir. 1999)(utilizing the American Bar Association Standards). In addition to the ABA standards, the Court finds that the *Liebling* factors also

47

provide an appropriate framework for fashioning attorney sanctions. Accordingly, the Court also takes into consideration (1) the nature of Mr. Labovitz's conduct, (2) the need to deter such conduct, (3) the preservation of dignity and reputation of the legal profession, (4) the need to protect the public, (5) sanctions imposed in similar cases, (6) the duty involved, (7) the lawyer's mental state, (8) actual and potential injury resulting from the misconduct, and (9) the existence of aggravating factors. *Liebling*, 929 So. 2d 911.

This Court appreciates the seriousness of the matters addressed in this Memorandum Opinion and Order. Courts must uphold the dignity of the legal profession, and need to protect the public from any attorney misconduct. Courts must consider imposing sanctions on the attorneys who appear before it when warranted. There are circumstances under which such sanctions are not just appropriate, but fundamentally necessary. Such is the case with Mr. Labovitz.

First, the nature of Mr. Labovitz's misconduct pertains to some of the most fundamental principles of bankruptcy and duties of an attorney. His reckless and often negligent handling of cases undermines the very purpose and sanctity of the bankruptcy process. He has been shown to repeatedly abandon his obligations to both this Court and to his clients. It follows that the need to deter such conduct is of paramount importance to the legal

system.   Failure to address such behavior undermines the dignity and reputation of the entire profession and of this Court.

The need to protect the public is also of principal importance, particularly in the bankruptcy court setting.   The individuals who appear before this Court as debtors are often suffering some of the most personally trying and difficult times of their lives, and they deserve protection from such careless and negligent behavior by those they pay to help them.   As the ramifications of going through a bankruptcy can reach far into every facet of an individual's life, it is crucially important that the process be treated with the utmost care and respect.   This, perhaps above all else, is the duty owed – yet repeatedly abdicated – by Mr. Labovitz.

Mr. Labovitz's actions in the Debtor's case, in other cases before this Court, and in those cases addressed by the Mississippi Bar, all amply illustrate a pattern of misconduct.   Calls from this Court and from the Mississippi Bar to cease such behavior appear to have gone unheeded. Efforts to redirect Mr. Labovitz's practices – whether they be private consultations or public reprimands – appear to have had no effect.

In other cases dealing with attorney misconduct, individuals who have exhibited similar behavior have been punished with both suspensions and disbarment.   *See, e.g., Parker*, 466 B.R. at 550 (upholding bankruptcy court decision to disbar attorney who violated Rule 9011 by repeatedly failing to

remit filing fees and making other false and misleading statements to the court); *Ludwick*, 185 B.R. at 247 (imposing a two-year suspension for attorney who forged debtor signature); *In re Nesom*, 76 B.R. 101 (Bankr. N.D. Tex. 1987) (finding attorney subject to sanctions, including 60-day suspension, for forging debtor's signature on statement of affairs, schedules, and schedule of current income).   The Court finds that when comparing instances of misconduct, Mr. Labovitz's actions fall on the more egregious end of the spectrum.

Lastly, Mr. Labovitz exhibits a continuous refusal to show true remorse for his misconduct.   When confronted with his transgressions, Mr. Labovitz always has an excuse as to why he should not be held responsible for the conduct or mistake.   The extenuating circumstances and excuses that he does offer are often times unsubstantiated or irrelevant to the matter at hand. The actual injury to his clients, caused by his behavior, has been demonstrated time and time again. *See, e.g., In re Bhakta*, 2013 WL 8597008 (Bankr. N.D. Miss. Aug. 23, 2013).   One of the most frustrating aggravating factors that this Court must consider is that, in short, when it comes to sanctions, nothing has worked.

With all previous efforts having been exhausted, the Court finds it has no choice but to bar Mr. Labovitz from the practice of bankruptcy law in this district.   "Disbarment is generally appropriate when a lawyer engages in

intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously, adversely reflects on the attorney's fitness to practice. *Sealed Appellant*, 194 F.3d at 674.  The Court finds that the forgery of the Debtor's signature, as well as the presentation of those falsified documents to the Court, represents the apex of dishonesty, fraud, deceit and misrepresentation.

"A federal court may disbar an attorney only upon presentation of clear and convincing evidence sufficient to support the finding of one or more violations warranting this extreme sanction." *In re Medrano*, 956 F.2d 101, 102 (5th Cir. 1992).  "The [disbarment] proceeding is not for the purpose of punishment, but for the purpose of preserving the courts of justices from the official ministration of persons unfit to practise [*sic*] in them." *Ex parte Wall*, 107 U.S. 265, 288, 2 S.Ct. 569, 27 L.Ed. 552 (1883).  Although such action usually falls under the province of a state bar association, "[i]t is well recognized that a court has the 'inherent authority to suspend or disbar lawyers.'" *Parker*, 466 B.R. at 550 (quoting *In re Snyder*, 472 U.S. 634, 634, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985)).  Such power is derived from the lawyer's role as an officer of the court which granted admission. *Theard v. United States,* 354 U.S. 278, 281, 77 S.Ct. 1274, 1276, 1 L.Ed.2d 1342 (1957).

For the reasons set forth above, the Court finds that the standard for the disbarment of Mr. Labovitz has been met.  Quoting Justice Benjamin

Cardozo, "'[m]embership in the bar is a privilege burdened with conditions.' The [attorney] was received into that ancient fellowship for something more than private gain. He became an officer of the court, and, like the court itself, an instrument or agency to advance the ends of justice." *People ex rel. Karlin v. Culkin*, 248 N.Y. 465, 470-71, 162 N.E. 487, 489 (1928)(internal quotations omitted). However, "[t]he license granted by the court requires members of the bar to conduct themselves in a manner compatible with the role of courts in the administration of justice." *In re Snyder*, 472 U.S. at 644-45, 105 S. Ct. at 2881. Regrettably, the Court finds that Mr. Labovitz has abandoned his role as an instrument to advance the ends of justice, and has failed to conduct himself in a manner compatible with the administration of justice. Accordingly, it is hereby,

**ORDERED, ADJUDGED** and **DECREED** that Neal H. Labovitz is hereby **PERMANENTLY DISBARRED FROM THE PRACTICE OF LAW** in the United States Bankruptcy Court for the Northern District of Mississippi effective September 18, 2015, at which time the Clerk of the Bankruptcy Court is directed to terminate Mr. Labovitz's CM/ECF privileges. Within seven (7) days of the date of entry of this Order, Mr. Labovitz shall give notice to each of his clients with cases pending in this Court of his inability to act as an attorney in this Court. The notice shall advise his clients to promptly substitute another attorney in his place or that they will be

proceeding *pro se*.  The Bankruptcy Clerk is further directed to provide notice of Mr. Labovitz's inability to practice law in this Court to all parties listed on the matrices for any pending cases and adversary proceedings in which Mr. Labovitz is an attorney of record.  It is further,

ORDERED, that Neal H. Labovitz is **PROHIBITED** from filing any new bankruptcy cases in this Court effective immediately upon entry of this Order.

## END OF OPINION ##